**SKILSTAF, INC., Plaintiff,**

v.

**ADMINITRON, INC., et al., Defendants.**

**No. Civ.A. 98–D–893–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

June 23, 1999.

W. Percy Badham, III, Robert W. Tapscott, Jr., Brannon J. Buck, Birmingham, AL, Randall S. Haynes, Larry W. Morris, Alexander City, AL, for plaintiff.

Jeffrey E. Friedman, Christopher J. Zulanas, John M. Bowling, Birmingham, AL, for defendant.

### MEMORANDUM OPINION
### AND ORDER

DE MENT, District Judge.

Before the court is Defendant Adminitron, Inc.'s ("Adminitron") Motion To Strike, which the court construes as a Motion to Dismiss ("Motion"), filed on April 14, 1999. Plaintiff filed a Memorandum In Opposition To Defendant's Motion To Strike, which the court construes as a Re-

sponse ("Response"), on May 5, 1999. On May 12, 1999, Adminitron filed a Response to Skilstaf's Memorandum In Opposition To Defendant's Motion To Strike, which the court construes as a Reply ("Reply"). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Adminitron's Motion to Dismiss is due to be denied.

## FACTUAL BACKGROUND

Plaintiff is a professional employer organization, which leases approximately 12,000 employees to clients in several states. As part of its employee benefits package, Plaintiff established and sponsored the Skilstaf, Inc. Flexible Benefit Plan ("Plan"), a self-funded benefit plan that offers health coverage to its employees pursuant to terms and conditions enumerated in the Plan.

In April 1996, Plaintiff decided to replace the third party administrator who had been administering the Plan since September 1992. After being contacted by Plaintiff, Adminitron submitted a proposal to serve as Plaintiff's third party administrator. On June 1, 1996, Plaintiff accepted Adminitron's proposal, and the Parties signed an Administrative Agreement. Successive Administrative Agreements ("Agreements") were signed on June 1, 1997 and January 1, 1998.

Said Agreements specify that Adminitron "shall provide its standard claim processing, claim payment and certain ministerial administrative services necessary for adjudication and payment of medical claims in accordance with the Plan." (1997 Admin. Agreement at 2.) However, Plaintiff, not Adminitron, remained as the ultimate plan administrator and explicitly reserved the power to "have the sole and exclusive right to construe and interpret each and every term, condition and provision of the Plan and to determine eligibility for participation and benefits." (Id.) Additionally, the Plan stated that "[i]t is expressly understood and agreed that [Plaintiff], as the Plan Administrator, shall be solely responsible for the final decision on all claims within the Plan's ERISA required claim appeal process." (Id. at 3.)

The gravamen of Plaintiff's Complaint centers around Adminitron's agreement to provide Plaintiff with excess loss insurance coverage. Before Plaintiff accepted Adminitron's proposal, Plaintiff had in place excess loss coverage with unlimited reimbursement liability and no policy limits. During negotiations with Adminitron, Plaintiff alleges that it informed Adminitron that it needed the same terms of excess loss insurance coverage, and that Adminitron agreed to obtain said insurance coverage for Plaintiff.

After Plaintiff hired Adminitron, Adminitron submitted a proposal to Plaintiff to contract with Lamar Life Insurance Company ("Lamar Life") for excess loss insurance coverage. According to Plaintiff, the proposal made no mention of the policy's maximum limit of reimbursement liability, and Adminitron failed to disclose that said policy included a maximum reimbursement limit of one million dollars. Based on Adminitron's representations and expertise, Plaintiff accepted the Lamar Life Policy for a policy period effective June 1, 1996 through June 1, 1997. Claims incurred during this policy period exceeded Lamar Life's Policy limit by approximately 2.3 million dollars. Although Plaintiff demanded that Lamar Life pay the excess claims, Lamar Life refused to do so, and Plaintiff paid the claims in full.

On August 13, 1998, Plaintiff filed its Complaint against Adminitron and Lamar Life alleging various state law claims including, inter alia, breach of contract, negligence, breach of fiduciary duty, wantonness, and fraud. After Plaintiff instituted this action, it settled all of its claims against Lamar Life, and the court dismissed said claims with prejudice on February 3, 1999.

Thereafter, Adminitron filed the instant Motion, wherein it argued that Plaintiff's Complaint is due to be dismissed because Plaintiff's state law claims are preempted by the Employee Retirement Income Se-

curity Act ("ERISA"), 29 U.S.C. § 1001, et seq. The court will now address the merits of Adminitron's Motion to Dismiss.

## MOTION TO DISMISS STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., U.S. v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir. 1990); *Anderson–Free v. Steptoe,* 970 F.Supp. 945, 953 (M.D.Ala.1997). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cannon v. Macon County,* 1 F.3d 1558, 1565 (11th Cir.1993); *see also Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." *Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Eleventh Circuit has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen,* 76 F.3d 347, 349 (11th Cir. 1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Braden v. Piggly Wiggly,* 4 F.Supp.2d 1357, 1360 (M.D.Ala. 1998).

## DISCUSSION

Adminitron argues that Plaintiff's state law claims are due to be preempted and, therefore, dismissed, because they "are based squarely upon the administration of an 'employee welfare benefit plan.' " (Mot. at 2.) Specifically, Adminitron argues that all of Plaintiff's state law claims " 'relate to' and/or have 'a connection with or reference to' the plaintiff's employment benefit plan" and "affect relations with principal ERISA entities." (*Id.* at 3.) According to Adminitron, Plaintiff's claims "relate to" the benefit plan at issue because "in order to address the very essence of their claims that Adminitron failed in the latter, an examination must be made into the number of employees and beneficiaries participating in the plan both before and during Adminitron's administration, the number and amount of claims paid by the plan and the number and amount of claims paid by the plaintiff as the plan employer." (Reply at 2.) Adminitron concludes that, because such an inquiry must be made, Plaintiff's claims, sufficiently relate to the Plan and, therefore, are preempted by ERISA. (*Id.* at 3.)

Plaintiff argues that its state law claims are not preempted, stating that "[t]here are *no* Plan benefits at issue in this action, as all medical claims for Plan participants have been paid for by [Plaintiff]." (Resp. at 2 (emphasis in original).) Rather, the present "action is purely a commercial dispute between two businesses and [Plaintiff's] state law claims against Adminitron bear no relationship to the Plan." (*Id.* at 7.) Additionally, Plaintiff argues that Adminitron is not an ERISA Plan fiduciary, as defined in 29 U.S.C. § 1002(21)(A), because Plaintiff, not Adminitron, has retained the authority to make the ultimate decisions regarding benefit eligibility, and Adminitron's role is limited to that of a "ministerial claims processor." (*Id.* at 5.) Plaintiff concludes by arguing that, because Adminitron is not a fiduciary and, thus, not liable under ERISA, and because Plaintiff's claims do not "relate to" the

Plan, Plaintiff's state law claims are not preempted by ERISA.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA's preemption clause is deliberately expansive, providing that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).

Although the term "relates to" is quite broad, it is not unlimited. The Supreme Court has cautioned that "relates to" should not be "taken to extend to the furthest stretch of its indeterminancy." *New York Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (hereinafter *"New York Blues"*). Indeed, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890; *see also Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (stating that ERISA does not preempt "run-of-the-mill state-law claims," even though such suits obviously affect and involve the plan). Moreover, the Eleventh Circuit recently noted that the Supreme Court has begun "essentially [to] turn[ ] the tide on the expansion of the preemption doctrine." *Morstein v. National Ins. Serv., Inc.*, 93 F.3d 715, 721 (11th Cir.1996) (en banc); *see also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir.1998) (noting the "recent sea change in courts' willingness to apply the preemption doctrine expansively").

The Fifth Circuit has explained that cases warranting preemption have two unifying characteristics:

(1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries....

*Memorial Hosp. Sys. v. Northbrook Life. Ins. Co.*, 904 F.2d 236, 245 (5th Cir.1990). Moreover, "[t]he most important factor for a court to consider ... is whether the state law affects relations among ERISA's named entities. '[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities ... than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.' " *Id.* at 249; *see also Morstein*, 93 F.3d at 722 (adopting the rationale of the Fifth Circuit and holding that "when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA").

In *Morstein*, plaintiff purchased a major medical insurance policy from Scott Hankins, an insurance broker and employee of Shaw Agency. 93 F.3d at 716. Morstein contacted Hankins to replace an existing medical insurance policy, and claimed that Hankins assured her that the policy that he proposed would provide the same coverage for preexisting conditions as her current policy. *Id.* at 717. One year after the new policy was issued, Morstein underwent hip replacement surgery, and National Insurance Services, Inc. refused to pay because it asserted that the surgery treated a preexisting condition, which was not covered under the terms of the policy. *Id.*

Morstein sued Hankins[1] in state court alleging negligence, malfeasance, misprepresentation, and breach of contract based on

---

1. The court notes, for the record, that Plaintiff also sued Hankins' employer, Shaw Agency. However, for the purposes of this opinion, the court has limited its discussion to the court's analysis regarding Hankins, as Hankins is the relevant defendant for purposes of the instant case.

Hankins' representation that the purchased policy covered preexisting conditions. *Id.* at 717. Hankins removed the case, arguing that ERISA preempted plaintiff's state law claims. The district court denied Morstein's motion to remand, concluding that her claims were "clearly relate[d] to the employee benefit plan." *Id.*

However, the Eleventh Circuit reversed, holding that "state law claims against an independent insurance agent and his agency for fraudulent inducement to purchase and negligence in processing her application for an ERISA-governed insurance plan" do not fall within ERISA's preemption doctrine "as they do not have a sufficient connection with the plan to 'relate to' the plan." 93 F.3d at 724. First, the court concluded that Hankins was not an ERISA entity, meaning that Hankins was neither the employer, the plan, the plan fiduciaries, nor the beneficiary under the plan. *Id.* at 722. Second, the court concluded that plaintiff's state law claims were not sufficiently related to the plan to warrant preemption, stating:

> Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA.... If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan.

*Id.* at 723.

■ The court finds that the facts of the instant case are analogous to those in *Morstein.* Although Adminitron admittedly is not an insurance agent, Adminitron, like Hankins, made certain promises regarding the scope of the excess loss insurance coverage that it agreed to procure on behalf of Plaintiff. Hankins assured Morstein that the insurance policy would provide the same coverage for preexisting conditions as her current policy, whereas Adminitron allegedly promised to obtain an insurance policy with the same terms of excess loss insurance coverage as Plaintiff had with its prior administrator.

■ Moreover, the court finds that Adminitron, like Hankins, is not an ERISA entity. Specifically, the court finds that Adminitron is not a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A). ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary responsibility in the administration of such plan....

29 U.S.C. § 1002(21)(A).

■ It is undisputed in this circuit that "a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary." *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288, 290 (11th Cir.1989) (quoting *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1564 (11th Cir.1987)). Indeed, an administrator who merely performs administrative functions and claims processing within a framework of rules established by an employer is not a fiduciary "especially if, as in this case, the claims processor has not been granted the authority to review benefits denials and make the ultimate decisions regarding eligibility." *Id.* (citation omitted).

In the present case, the court concludes that Adminitron is not a fiduciary and in so concluding, relies on the Administrative Agreements submitted by the Parties. Said Agreements clearly specify that Plaintiff has "the sole and exclusive" responsibility for Plan interpretation and final determination of eligibility of claims. (1997 Admin. Agreement at 2.) Indeed, the Agreement states that Adminitron provides "standard claim processing, claim payment and certain ministerial administrative services" *(Id.),* which duties the court finds to be clearly ministerial rather

than discretionary. Thus, because Adminitron's duties are ministerial and not discretionary, the court finds that Adminitron is not a fiduciary within the meaning of ERISA. *See Baker,* 893 F.2d at 290 (finding that plan administrator was not a fiduciary because administrator merely processed claims and disbursed benefit payments and had not been granted the authority to review benefits denials or make the ultimate decisions regarding eligibility); *see also Geweke Ford v. St. Joseph's Omni Preferred Care Inc.,* 130 F.3d 1355 (9th Cir.1997) (holding that ERISA did not preempt employer's state law contract claims against a third party administrator who was not a plan fiduciary); *Kyle Ry., Inc. v. Pacific Admin. Serv., Inc.,* 990 F.2d 513, 516 (9th Cir.1993) (holding that plan administrator was not a fiduciary under ERISA where administrator assumed only ministerial functions); *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 612 (7th Cir.1995) (holding that plan administrator was not a fiduciary because administrator had no discretion in the administration of the plan).

■ Additionally, the court notes that Adminitron's central argument for preemption focuses on the need to refer to Plaintiff's Plan in order to calculate Plaintiff's damages.[2] Specifically, Adminitron contends that because an examination must be made into "the number and amount of claims paid by the plan and the number and amount of claims paid by the plaintiff as the plan employer," Plaintiff's state law claims sufficiently relate to the Plan for purposes of preemption. However, the court disagrees with this conclusion.

In *Morstein,* Hankins put forth a similar argument, which was rejected by the Eleventh Circuit. Hankins contended that be-cause Morstein's damages could have been measured based on the difference between what she would have received under her old plan versus what she actually received under the new plan, Hankins had met his burden of proving that Morstein's claims sufficiently "related to" ERISA for preemption purposes. In disagreeing with Hankins, the court reasoned:

> Although the remedy sought may affect the plan in that Morstein's damages (should she successfully prevail on her claims) against Hankins ... may be measured based on what she would have received under her old plan, such indirect relation between a beneficiary and the plan is not enough for preemption.... The Supreme Court in New York Blues made it clear that economic impact alone is not necessarily enough to preempt a state law.

*Id.* at 723 (citing *New York Blues,* 514 U.S. at 668, 115 S.Ct. 1671). Based on the rationale in *Morstein,* this court rejects Adminitron's argument with regard to damages. Although it is true that Plaintiff's actual damages are based on the claims not covered by its excess loss insurance policy, any connection with the Plan at issue here is only indirect, and not sufficient for preemption.

Therefore, the court finds that Plaintiff's state law claims do not fall within ERISA's broad preemptive scope, as they do not have a sufficient connection with the plan to "relate to" said Plan. In the present case, Plaintiff is neither claiming benefits under a policy nor challenging any action concerning the processing of an ERISA claim. *Cf. Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that the "common law cause of action raised in Dedeaux's complaint, each based on alleged improper

2. Additionally, the court notes that Adminitron makes a number of conclusory statements in support of preemption, including that Plaintiff's state law claims "affect relations with principal ERISA entities" and " 'relate to' and/or have 'a connection with or reference to' the plaintiff's employment bene-fit plan." (Mot. at 2.) However, because Adminitron has not demonstrated how Plaintiff's claims "affect relations" and has offered nothing more than a bald allegation, the court declines to address the merits of Adminitron's arguments.

processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for preemption under § 514"); *Tri–State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, (4th Cir.1994) (holding that "[a]ll of [plaintiff's] allegations are essentially complaints about the processing of claims under an employee benefit plan and, therefore, relate to the plan in the common sense meaning of that phrase"); *Lanter Co. v. D.B.L. Serv., Inc.*, No. 93–750–WLB, 1994 WL 285470 (S.D.Ill. Jan.5, 1994) (finding that ERISA preempted plaintiff's claims against administrator because all of the "conduct stems from the defendants' actions with respect to claims made and processed on behalf of an employee"); *Ampere Automotive Corp., v. Employee Benefit Plans, Inc.*, No. 92–C–2580, 1992 WL 220912 (N.D.Ill. Sept. 1, 1992) (finding that conduct alleged in the complaint stems from administrator's alleged fraudulent processing of plan claims and was, therefore, preempted by ERISA).[3]

Additionally, Plaintiff's claims against Adminitron do not require an interpretation of the Plan's terms. Rather, Plaintiff has grounded its Complaint solely in Adminitron's failure to procure the promised excess loss insurance. Indeed, a determination of the merits of Plaintiff's Complaint will require the court to analyze the terms of the Administrative Agreement and the proposal submitted by Adminitron, not the terms of the ERISA plan.

■ Moreover, the court concludes that allowing preemption of Plaintiff's state law claims will not serve Congress' purpose for ERISA. *See Morstein*, 93 F.3d at 723. As the court stated in *Morstein*, "Congress enacted ERISA to protect the interest of employees and other beneficiaries of employee benefit plans." *Id.* To immunize Adminitron for alleged torts arising separate and apart from Plaintiff's insurance

plan will not support ERISA's congressional objective. If ERISA preempts an employer's potential cause of action for fraud or breach of contract in the present circumstances, employers choosing excess cost insurance "will no longer be able to rely on the representation of the [administrator] regarding the terms of the plan." *Id.* Accordingly, the court finds that Adminitron's Motion to Dismiss is due to be denied. *See Tie Communications, Inc. v. First Health Strategies, Inc.*, No. 97–2597–EEO, 1998 WL 171126, at *3 (D.Kan. March 3, 1998) (finding that ERISA did not preempt state claims brought against plan administrator because said claims do not involve interpretation of a benefit plan, and the central dispute involves the Administrative Agreement and the Excess Insurance Agreement, not the plan); *Jefferson Parish Hosp. Serv. v. Ruby Tuesday's Inc.*, No. 97–2722, 1998 WL 24422, at *4 (E.D.La. Jan.23, 1998) (finding that plaintiff's claim of detrimental reliance on plan administrator's representation of insurance coverage was not preempted by ERISA); *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F.Supp. 429, (S.D.Miss.1995) (finding that plaintiff's claim against administrator for failure to timely notify excess insurer of claims was not preempted by ERISA); *Robco of Am., Inc., v. Insurance Co. of North America*, 845 F.Supp. 1112, 1115 (W.D.Pa.1994) (finding that employer's claim against administrator for breach of administrative services agreement not preempted by ERISA); *Fox, Curtis & Assoc., Inc. v. Employee Benefit Plans, Inc.*, No. 92–C–5828, 1993 WL 265474, at *6 (July 13, 1993 N.D.Ill.) (finding that ERISA did not preempt breach of administration-insurance agreement claims brought against Plan Administrator).

---

**3.** The court notes that Adminitron has offered both the Fourth Circuit case and the two Illinois district court cases to support its argument that Plaintiff's state law claims are due to be preempted by ERISA. However, the court finds that these cases actually support the Plaintiff's position, because in said cases, the claims arose due to an administrator's processing of claims, not due to procuring insurance or a ministerial duty.

## *ORDER*

Based on the foregoing, it is CONSIDERED and ORDERED that Adminitron's Motion to Dismiss be and the same is hereby DENIED.