| t PEATROSS, J.
This consolidated appeal[1] presents the question of whether the Employee Retirement Income Security Act’s (“ERISA”) broad preemption provision bars the state law claims of Vantage Health Plan, Inc. (“Vantage”), sponsor of an ERISA plan, against the plan’s administrator, ACMG of Louisiana, Inc. (“ACMG”)[2]. The trial court sustained an Exception of Lack of Subject Matter Jurisdiction filed by ACMG and ordered the case transferred to federal district court. Vantage appeals. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Vantage is a sponsor of a preferred provider network and health maintenance organization operating in Louisiana. In its original petition filed in state district court, Vantage alleged that ACMG had violated provisions of a written management agreement between Vantage and ACMG, whereby the latter was to provide “turn-key management services” in administration of the plan. Specifically, Vantage alleged in its original petition as follows:
3.
PETITIONER shows that following the signing of the agreement, defendants undertook to perform services under the contract including, among other things, the preparation of various rate schedules for purposes of formulating per person charges for health care services.

Jé-

PETITIONER shows that after defendants formulated the premium rates, various employer organizations were contacted for purposes of utilizing the services of Petitioner’s plan to provide health care services for their employees.
5.
*401 PETITIONER alleges that after these employer groups and their employees obtained enrollment in the plan, various claims by or on behalf of the employees for payment of medical expenses would be filed which claims required administrative review and payment, which functions the defendants had contracted with Petitioner to provide.
6.
PETITIONER shows that in due course numerous claims were submitted but the defendants failed to timely and promptly process and pay the claims and in various instances, improperly overpaid claims as well as other instances of mishandling claims.
12.
PETITIONER further alleges that it has sustained damages as a result of the improper management by the defendants under the contract including by way of illustration the negligent performance of the following:
(a) In failing to adequately and properly assess actuarial table and other appropriate information for purposes of premium determinations;
(b) improperly paying for in-patient services as out-patient services;
(c) improper authorizations of hospital services;
(d) improper overpayments of various claims;
(e) failure to properly submit appropriate claims for payment to the reinsurance company;
(f) negligent and improper marketing of the plan;
(g) and other specifics to be show(sic) at the trial of this case.
Vantage later filed a supplemental petition naming as a defendant ACMG’s general liability insurer and a second supplemental petition ^naming as defendants certain officers and directors of ACMG. In its second supplemental petition, Vantage specifically alleged that certain officers and directors of ACMG, who “directed the actions and activities of employees of ACMG” acted “with negligence or, alternatively, intentionally, or alternatively, some or all have acted in concert and conspiracy to intentionally cause harm and financial ruin to Vantage.... ” Vantage then detailed a non-exclusive list of the alleged wrongful actions of the officers and directors, including, inter alia, the following:
(h) by actions directly designed to breach the fiduciary obligations of ACMG OF LOUISIANA, INC., acting through its board member Tom Maynard to violate its obligations to VANTAGE HEALTH PLAN, INC. By the conduct described immediately above;
Subsequent to the filing of the supplemental petitions, ACMG filed a notice of removal to federal court on the basis of exclusive federal preemption under ERISA 29 U.S.C. § 1001, et seq. A motion to remand was filed by Vantage and the federal magistrate granted the motion, finding that ACMG had failed to carry its burden of proof regarding the timeliness of the removal.[3] While the federal magis *402 trate’s ruling was not based on the issue of ERISA preemption, he did, however, make the following observations in his written judgment:
It is undisputed that Vantage is an ERISA program and that the original petition alleged improper payment for inpatient . services, improper | ¿authorization for hospital services, improper overpayments of various claims, and other actions which necessarily constitute allegations of a breach of the fiduciary duty of the third party administrator to properly administer the plan. As such, the petition clearly falls under ERISA preemption.
ACMG appealed the federal magistrate’s ruling; and the federal district court judge, after reviewing the matter de novo, agreed with and affirmed the federal magistrate’s finding that the removal was untimely. The federal district court judgment did not address the ERISA preemption issue.
The matter was, therefore, remanded to the state district court, where ACMG then filed an Exception of Lack of Subject Matter Jurisdiction, again urging ERISA preemption and arguing that the federal court had federal jurisdiction over the matter. Specifically, ACMG argued that Vantage’s claims clearly fall within the broad preemption of ERISA as claims against an ERISA fiduciary, which is exclusively within the jurisdiction of the federal court. On the other hand, Vantage argued that the matter is one of state law breach of contract not brought by either a plan participant or beneficiary and, therefore, not subject to ERISA preemption. On November 29, 2001, the state district court judge sustained the exception and dismissed Vantage’s suit without prejudice. This appeal ensued.

DISCUSSION

The issue before this court is whether the trial court erred in finding that Vantage’s original and supplemental petitions give rise to ERISA breach of fiduciary duty claims solely within the jurisdiction of the federal court. We find no error in the trial court’s judgment.,
IrAs an initial matter, there is no dispute that the PPO/HMO plan established by Vantage for the benefit of employer participants and employee beneficiaries is a plan governed by ERISA. Further, the regulatory scheme of ERISA is comprehensive, containing a broad preemption provision which provides that “any and all state laws,” whether they be laws aimed at employee benefit plans or merely generally applicable laws, are preempted “insofar as they ... relate to any employee benefit plan.” ERISA § 514(a), 29 U.S.C. § 1144(a). The statute’s preemption provision is to be broadly construed and extends to state common law tort and contract claims.' Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). A state law “relates to” an employee benefit plan, using the common meaning of the phrase, if it has any connection to such a plan. Ampere Automotive Corporation v. Employee Benefit Plans, Inc., 1992 WL 220912 (N.D.Ill.1992), citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Even state law claims brought pursuant to state laws which do not specifically pertain to employee benefit plans are preempted if the claims arise directly or indirectly from the administration of such plans. Ampere, supra, citing Gibson v. Prudential Ins. Co. of America, 915 F.2d 414 (9th Cir.1990).
*403 In Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44 (1st Cir.2000), the First Circuit succinctly recited the principles of ERISA preemption:
“The question whether a certain state action is preempted by federal law is one of congressional intent.” Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Express “ERISA preemption analysis ... involves two central questions: (1) whether the plan at issue is an ‘employee benefit plan’ and (2) whether the cause of action ‘relates to’ | fithis employee benefit plan.” McMahon v. Digital Equip. Corp., 162 F.3d 28 (1st Cir.1998).
In adopting § 514(a), Congress deliberately rejected narrower preemption language directed at “state laws relating to the specific subjects covered by ERISA,” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (emphasis added), choosing instead to supplant all state laws that “relate to” ERISA-regulated plans. In Shaw, the Supreme Court observed that “[a] law ‘relates to’ an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.” Id. This “early attemptf ] by the Supreme Court to interpret ERISA’s preemption clause relied heavily upon textual analysis and a dictionary definition of ‘relate to,’ ” Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co. [Inc.], 126 F.3d 61, 66 (2d Cir.1997), and led to the conclusion that ERISA preemption was “conspicuous for its breadth,” FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Indeed, ERISA preempts a state law that has a connection with or refers to an ERISA-regulated benefits plan, “even if the law is not specifically designed to affect such plans, or the effect is only indirect and even if the law is consistent with ERISA’s substantive requirements.” District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (internal quotation marks and citations omitted).
Nonetheless, the Supreme Court has recognized that not every possible cause of action that can be asserted against an ERISA plan is preempted: “[s]ome state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law ‘related to’ the plan.” Shaw, supra.
The Fifth Circuit places the focus of the ERISA preemption inquiry on “how the resolution of the cause of action will affect relationships regulated by ERISA”:
The most important factor for a court to consider in deciding whether a state law affects an employee benefit plan “in too 17tenuous, remote, or peripheral a manner to be preempted” is whether the state law affects relations among ERISA’s named entities. “[Cjourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities — the employer, the plan, the plan fiduciaries, and the beneficiaries — than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.”
Union Health Care, Inc. v. John Alden Life Ins. Co., 908 F.Supp. 429 (S.D.Miss. 1995), citing Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir.1990) (quoting Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456 (5th Cir.1986), cert. denied, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987) *404 and 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987)).
Hence, the central inquiry in the ease sub judice, is whether Vantage’s claims “relate to” the plan. We conclude that it is clear that the state law claims asserted by Vantage “relate to” the employee benefit plan within the meaning of § 1144. First, as previously mentioned, there is no dispute that the plan in this case is an ERISA plan. Second, all of the allegations contained in Vantage’s original and supplemental petitions stem from ACMG’s alleged wrongful actions with respect to processing and administration of plan claims made by employee beneficiaries and participants of the plan.
In Tri-State Machine, Inc. v. Nationwide Life Insurance Company, 33 F.3d 309 (4th Cir.1994), cert. denied, 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995), an employer filed suit in state court against its group health insurer, alleging that the insurer failed to administer the group health plan according to the terms of an agreement and mismanaged claim ^processing procedures. Tri-State’s complaint particularized its grievances with the group health insurer to include paying claims to the wrong providers, charging claims to employees who had not submitted claims, paying claims not covered and delaying payment of claims once the stop-loss limit had been reached for the year. Finding “little doubt” that the claims “relate to” the plan, the court held:
All of these allegations are essentially complaints about the processing of claims under an employee benefit plan and, therefore, relate to the plan in the common sense meaning of that phrase. Indeed, the Supreme Court in Pilot Life specifically stated: “the common law causes of action raised in Dedeaux’s complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for preemption under § 514(a).” (Emphasis in original; internal citations omitted).
Thus, it appears that Vantage’s claims fall within ERISA’s broad preemption.
As the court in Ampere, supra, noted, however, the inquiry does not end with a discussion of § 1144. “While § 1144 is a broad expansive provision, ERISA’s civil enforcement provisions contained in § 1132 have a narrower reach.” Ampere, supra,. Section 1132 provides as follows:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan;
3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this sub-chapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchap-ter or the terms of the plan;
* *
(7) by a State to enforce compliance with a qualified medical child support order (as defined in section 1169(a)(2)(A) of this title);
(e) Jurisdiction
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, benefi *405 ciary, fiduciary ... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a).
This extensive civil enforcement scheme manifests Congress’ intent that ERISA preempt state law under certain circumstances. A. Copeland Enterprises, Inc. v. Slidell Memorial Hospital, 94-2011 (La.6/30/95), 657 So.2d 1292, citing Cramer v. Association Life Insurance Co., 569 So.2d 533 (La.1990), cert. denied, 499 U.S. 938, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991). Vantage argues that its action does not fall within the scope of § 1132 because the action does not involve an employer, participant or plan beneficiary. This argument, however, ignores the inclusion of fiduciaries in § 1132. Clearly, as plan sponsor, Vantage is a fiduciary with standing under § 1132(a)(2) and (3) to bring an action to enforce the plan. See Copeland, supra; Ampere, supra. Likewise, we find that ACMG held fiduciary status as third party administrator.
“ERISA imposes personal liability on ‘[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon [ERISA] fiduciaries.’ ” Reich v. Lancaster, 55 F.3d 1034 (5th Cir.1995), citing Schloegel v. Boswell, 994 F.2d 266 (5th Cir.1993), cert. denied, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 374 (1993); |in29 U.S.C. § 1109(a). ERISA defines a plan fiduciary, in pertinent part, as follows:
[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A). “An ERISA fiduciary includes anyone who exercises discretionary authority over the plan’s management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan’s administration.” Reich, supra, citing Pacificare Inc. v. Martin, 34 F.3d 834 (9th Cir.1994) (quoting Credit Manager Ass’n of Southern California v. Kennesaw Life & Accident Insurance Co., 809 F.2d 617 (9th Cir. 1987)). The term fiduciary is to be given a liberal construction in keeping the remedial purpose of ERISA. Reich, supra; American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States, 841 F.2d 658 (5th Cir.1988) (third party administrator’s authority to grant or deny claims, to manage and disburse fund assets and to maintain claims files clearly qualifies as discretionary control respecting management of a plan or its assets within the meaning of § 1002(21)(A)). See also Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio, 982 F.2d 1031 (6th Cir.1993), cert. denied, 510 U.S. 819, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993); Best International, U.S.A. v. Tucker and Clark, 2001 WL 406207 (N.D.Tex.2001); Moore v. Hewlett-Packard Co., 2000 WL 361680 (E.D.Pa.2000).
|uIn Ampere, supra, the plan sponsor, Ampere, sued its administrator, Employee Benefit Plans, Inc. (“EBP”). In its complaint, Ampere alleged that EBP failed to inform Ampere that it had purchased Ampere’s stop-loss policy from Mutual Benefit Life Insurance Company and further alleged that EBP had delayed the processing of claims until the subsequent year once the limit on the stop-loss policy had been reached so that the Insurer would not have any liability under the policy. *406 Ampere argued that its state law claims were not preempted because “it [was] seeking recovery on its own behalf, rather than on behalf of an ERISA plan, beneficiary, or plan participant.” The court rejected this argument, finding that Ampere and EBP were fiduciaries and that the claims clearly related to the administration of the ERISA plan and were, therefore, preempted. The court expressed no reservation in finding EBP to be a plan fiduciary, stating “[i]ndeed, if the allegations in the complaint are true, the wrongful conduct could not have been engaged in but for the discretion exercised by the Administrator.”
Similarly, in Hampers, supra, a former executive filed suit against his former employer alleging that the employer breached an employment contract by failing to enroll the executive in the company’s supplemental executive retirement plan (“SERP”). The court found that, in deciding not to enroll the executive in the SERP, the employer was acting as an ERISA employer in a fiduciary capacity with responsibility over administration of the SERP. The court stated:
Thus, it is only by virtue of [the employer’s] status as an ERISA employer with direct control over the administration 11?and operation of the [SERP] that [the employer] could have breached the 1991 agreement in the way [the executive] insists that it did. (Emphasis in original).
See also Lanter Co. v. D.B.L. Services Inc., 1994 WL 285470 (S.D.Ill.1994) (finding that ERISA preempted plaintiffs claims against administrator because all of the alleged wrongful “conduct stems from the defendants’ actions with respect to claims made and processed on behalf of an employee.”)
Likewise, as previously stated, the allegations of Vantage’s original and supplemental petitions speak irrefutably in terms of discretionary functions allegedly improperly performed by ACMG, including the improper processing and payment of claims, overpayment of claims and improper marketing of the plan. These allegations go to the heart of the discretion vested in a plan administrator and directly relate to the protection of the interests of participants and beneficiaries of an employee benefit plan. See 29 U.S.C. § 1001(b).[4] Had ACMG not been acting in a fiduciary capacity, vested with the discretion and authority over the administration of the plan, it could not have committed the specific breaches of which Vantage complains.
It is in this respect that we find the cases relied upon by Vantage to be distinguishable from the case sub judice. This is not a case where the |13defendant is a third party insurer or service provider who is not an ERISA entity, i.e., plan, employer, participant, beneficiary, fiduciary; nor is this a case where a defendant performed only ministerial functions of administration and was not vested with discretion or authority over the administration of the plan. In addition, this is not a case where the resolution of the claims asserted have no effect on the relationship between ERISA entities. See, e.g., Geweke Ford v. St Joseph’s Omni Preferred Care, Inc., 130 F.3d
*407 1355 (9th Cir.1997) (contract claims against third party provider of insurance and administrative services were not preempted where allegation was of failure of administrator to timely file claim with insurer and not a failure to properly administer the plan; claims did not “depend upon ERISA, and d[id] not affect (sic) the relationships between the principal ERISA participants.”); Tie Communications, Inc. v. First Health Strategies, Inc., 1998 WL 171126 (D.Kan.1998) (plan sponsor’s claims against third party administrator held not preempted where plan sponsor remained the plan fiduciary and retained “all discretionary authority and control over plan administration” and third party administrator was not a fiduciary, but merely handled medical bills ■ and disbursement of plan funds to beneficiaries); Union Health Care, Inc., supra (plan sponsor’s claim against insurer not preempted where insurer was not a plan fiduciary and claim against administrator alleging that it failed to timely notify excess insurer of claims was not preempted because the claim “d[id] not relate to [the administrator’s] responsibilities to the plan or its participants, with respect to which duties it has a fiduciary relationship. Rather, the claims luasserted ... relate solely to [the administrator’s] duties vis-a-vis the reinsurance contract.”); Fox, Curtis & Associates, Inc. v. Employee Benefit Plans, Inc., 1993 WL 265474 (N.D.Ill.1993) (claim against third party administrator and stop-loss insurer alleging breach of contract not preempted in case that did not involve “the adjudication of any discretionary administrative decision-making on the part of defendants regarding the rights of plan beneficiaries” and “any effect (sic) that Defendants’ breach of their obligations may have on plan beneficiaries is incidental to [employer’s] claims.”); Michigan Affiliated Healthcare System, Inc. v. CC Systems Corporation of Michigan, 139 F.3d 546 (6th Cir.1998) (plan sponsor’s claim against third party administrator was not preempted where third party administrator was not a fiduciary of plan as per the terms of the plan and did not have discretion or decision-making authority.); See also Skilstaf Inc. v. Adminitron, Inc., 66 F.Supp.2d 1210 (M.D.Ala.1999) (distinguishing many cases cited in this opinion, stating that an administrator who “merely performs administrative functions and claims processing within a framework of rules established by the employer” is not a fiduciary as opposed to an administrator who “has been granted the authority to review benefits denials and make the ultimate decisions regarding eligibility”)
Finally, we note that further evidence of ACMG’s fiduciary capacity is found in Vantage’s Memorandum in Opposition to Motion for Summary Judgment, wherein Vantage argues as follows:
... [Vjirtually every act of the day to day handling of the Vantage plan was done by ACMG, Inc. There is no question |! sbut that ACMG, Inc. conducted and directed the formation of Vantage’s plan, directed the administration and marketing of the plan, designed and prepared the rate models for the plan, as well as every other imaginable activity that was conducted on behalf of Vantage.
Any argument that ACMG was not a plan fiduciary with respect to administration of plan must necessarily fail in the wake of such a strong statement of ACMG’s discretionary authority. We find that the preemption of Vantage’s claim serves Congress’ stated purpose for ERISA, i.e., to “protect the interest of employees and other beneficiaries of employee benefit plans.” 29 U.S.C. § 1002. The resolution of claims that involve whether, when and how much beneficiaries are paid on claims under an employee benefit plan, as determined by *408 an administrator acting in a fiduciary capacity, clearly “relate to” the administration of the plan and, therefore, to the protection of the beneficiaries of the plan.
We find no merit in Vantage’s remaining arguments.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to Vantage Health Plan, Inc.
AFFIRMED.

. These two suits were consolidated on order of this court on May 23, 2002. Docket number 36,362 is a suit filed by Vantage in state district court subsequent to, and as a result of, the trial court's sustaining ACMG’s Exception of Lack of Subject Matter Jurisdiction in docket number 36,430. Since we affirm the trial court’s judgment on the exception, the subsequent state suit, docket number 36,362, is hereby dismissed without prejudice.

. Named as defendants were ACMG, Inc. and ACMG of Louisiana, Inc. These entities are treated by the parties and, therefore, by this court, as one and the same.

. Service of the original petition was made on ACMG sometime prior to October 28, 1998. ACMG sought a temporary restraining order and preliminary injunction seeking to maintain the contract in effect and continue payment to ACMG under the contract — both were ultimately denied by the trial court and no appeal was taken. On February 16, 1999, Vantage filed its supplemental petition adding the insurance carrier as a defendant and, on February 19, 1999, filed its second supplemental petition naming as defendants various officers and directors of ACMG, Inc. It was *402 not until April 2, 1999, that defendants filed a notice of removal.

. Section 1001(b) states:
It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other, information with respect thereto, by establishing standard of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.