311 So.2d 642 (1975)
Roy RITCHIE
v.
L. Ralph SMITH, d/b/a Ralph Smith Insurance Agency, et al.
No. 47659.
Supreme Court of Mississippi.
April 28, 1975.
*643 Creekmore & Beacham, Jackson, for appellant.
Watkins & Eager, Velia Ann Mayer, Jackson, Richard E. Stratton, III, Brookhaven, Perry, Phillips, Crockett & Morrison, Carl F. Andre, Jackson, for appellees.
SUGG, Justice:
This is an appeal from a judgment rendered by the Circuit Court of the First Judicial District of Hinds County sustaining a motion of the defendants for a directed verdict.
Roy Ritchie, plaintiff, brought an action against the defendants, Smith and Brewer, and charged in Count I of his declaration that defendants were negligent in placing fire insurance with the National Exchange Insurance Company, a Missouri corporation, which, under its charter was not authorized to write insurance in any state of the union except the State of Missouri. Plaintiff charged in Count II of his declaration that defendants unlawfully placed insurance with non-admitted foreign insurance companies and sought recovery of $12,000, the face amount of the policy, together with interest and costs.
Smith was a licensed insurance agent at the time of the transactions involved. In mid-1964 Ritchie approached Smith for the purpose of procuring fire insurance on his night club. Smith was unable to place Ritchie's risk with a company licensed to do business in Mississippi. Since Smith did not have a certificate of authority from the commissioner of insurance to place fire insurance in insurers not licensed to do business in this state, he enlisted the services of Brewer to place the risk with a non-admitted company. Brewer was licensed under Mississippi Code Annotated section 83-21-19 (1972) to place risks with non-admitted companies. Brewer also attempted to place plaintiff's risk with admitted companies as required by law, but was unable to do so. He then contacted his excess and surplus line market and determined that a premium quotation of $416.67 from National Exchange Insurance Company, a Missouri corporation, was the best that could be obtained for Ritchie's circumstances. National had not qualified to do business in Mississippi. On June 12, 1964, Ritchie gave Smith a check for the premium as quoted. Smith retained his commission and forwarded the balance to Brewer. Brewer countersigned the policy on June 23, 1964, sent it to Smith who stamped his agency name on the face of the policy. Smith then delivered the policy to Ritchie.
Before issuing the policy, Brewer contacted insurance agents in Louisiana, Texas, Alabama and Chicago and found that these agents were issuing policies of National and were satisfied with the company. Smith testified that Brewer told him
that an investigation revealed that National was capable of paying its claims. Smith did not investigate National, but relied on Brewer's statements.
Subsequently Brewer was informed that the charter of National prohibited the company from writing insurance outside the State of Missouri and that Tri-State Insurance Company of Pennsylvania would assume all National policies. Upon receipt of this information, Brewer checked Best's Insurance Guide and determined that the rating given Tri-State was satisfactory. Portions of Best's Insurance Guide were introduced into evidence and in the 1964 *644 publication of Best's Insurance Guide three insurance companies were listed under the Grace group, these being Lawn Mutual Insurance Company, Palmyra General Insurance Company and Tri-State Mutual Insurance Company (Pennsylvania). The rating and financial data referred only to Palmyra General and was B: CCC, which is explained in the publication as being good with a financial rating of $250,000 to $500,000. The 1965 publication of Best's Insurance Guide showed that the Grace group consisted of only two companies, these being Palmyra General Insurance Company and Tri-State Mutual Insurance Company (Pennsylvania). Again the rating and financial data contained in the publication referred only to Palmyra General. The rating in the 1965 publication was C &mnplus;: CCC which, according to the publication gives a rating of fairly good with a financial rating of $250,000 to $500,000. Neither publication lists any financial data or operating experience relating solely to Tri-State. Brewer checked with his London brokers and discovered that Tri-State retained the first $4,000 of all risks and re-insured the excess with Lloyd's of London. Brewer also stated that Tri-State was on the approved list of insurance companies in the State of Louisiana.
Brewer testified that he became a subagent of the general agent for Tri-State and sent assumption endorsements, to be signed by policyholders, along with letters recommending Tri-State "without any question." His authority as a subagent was not evidenced in writing. The assumption endorsement executed by Tri-State and Ritchie follows:
 ASSUMPTION ENDORSEMENT
 Attached to and forming part of Policy Number 12417
 I/We understand and agree that the Liability of the National
 Exchange Insurance Company under the above numbered Policy is
 cancelled effective 12:01 a.m. June 1st, 1964 and assumed on the
 identical terms and conditions by the Tri State Mutual Insurance
 Company of Palmyra, Pennsylvania.
 Date 10-9-64 Accepted /s/ Roy Ritchie
 Assured
 THE NAMED INSURED IS HEREBY NOTIFIED that by virtue of this
 policy he is a member of Tri State Mutual Insurance Company,
 Palmyra, Pennsylvania, and that the annual meeting of said
 Company is held at its office in Palmyra, Pennsylvania, on the
 second Wednesday in March of each year.
 The insured shall under no circumstances be subject to
 assessment as respects this policy of insurance.
 /s/ D. John Grace, Jr. Secretary
 /s/ Carlton H. Grace President
In October of 1964, a fire totally destroyed Ritchie's night club. After the passage of several months during which payment of Ritchie's claim was not forth-coming, Smith informed Ritchie that Tri-State was in bankruptcy. Ritchie filed a claim in bankruptcy, but was informed by letter from the Pennsylvania Insurance Department that his claim has been disallowed.
The letter follows:
*645
 COMMONWEALTH OF PENNSYLVANIA
 INSURANCE DEPARTMENT
 Liquidation Division
 Room G-20 Finance Bldg.
 Harrisburg
 17120
 TRI-STATE MUTUAL INSURANCE COMPANY (DISSOLVED)
Roy Ritchie DATE: June 4, 1971
C/O Creekmore & Beacham, Esquire
821 Bankers Trust Plaza Building NAME OF CLAIMANT:
Jackson, Mississippi Roy Ritchie
 P/C NUMBER: 73-472
 YOUR FILE NUMBER:
 REASON FOR DISALLOWANCE:
 No coverage  Broker
 exceeded authority in
 writing policy.
 NOTICE OF CLAIM VALUATION
 The claim filed by you for $12,000.00 against this dissolved
company has been totally disallowed. This will be the basis on
which distribution, if any, will be made. The Statutory Liquidator
will recommend to the Court of Common Pleas of Dauphin County,
Pennsylvania, that your claim be approved as valued.
 Should you accept this valuation, please complete Item I below.
 If you take exception to this valuation of your claim please
complete Item II below.
 This notice of evaluation must be returned to this office within
30 days of the date of receipt. Otherwise, said notice will be
considered as accepted and binding and will be submitted to the
Court as such.
 You shall be furnished with notice, in due time, of filing with
the Court, by the Liquidator, of a petition for Distribution on
claims.
 Insurance Commissioner
 Commonwealth of Pennsylvania,
 and as such, Statutory
 Liquidator of dissolved
 companies
RAS:sp BY /s/ Roy A. Sulouff, Jr.
 ROY A. SULOUFF, JR.
 INSURANCE CLAIMS EVALUATOR
Item I: I hereby accept the valuation of my claim.
P/C #73-472 ___________________________________
 Claimant
NAME: Roy Ritchie ___________________________________
 Date
-------------------------------------------------------------------
Item II: I hereby take exception to this valuation of my claim.
P/C #73-472 ___________________________________
 Claimant
NAME: Roy Ritchie ___________________________________
 Date
*646 Defendants objected to the introduction of the letter and it was admitted solely for the purpose of showing that the claim of Ritchie was disallowed. The reason for disallowance as stated in the letter was excluded by the court.
Plaintiff argues that he made out a prima facie case of negligence on Count I of his declaration and the court erred when it directed a verdict for the defendants. The general rule governing negligence of insurance agents is stated in 43 Am.Jur.2d, Insurance § 176 page 232 as follows:
An insurance agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain, and any negligence or other breach of duty on his part which defeats the insurance he procures will render him liable for the resulting loss. In this regard, the agent must faithfully carry out the instructions given him by his principal, his duty being not merely to obtain a policy, but to obtain one which conforms to the application. Moreover, by holding himself out as being qualified to procure insurance, the agent is required to exercise the particular skill reasonably to be expected of one in that occupation, and to have adequate knowledge as to the different companies and the variety of terms available with respect to the undertaking he has assumed.
Brewer was called as an adverse witness and testified about his extensive experience and training as an insurance agent over a period of many years. It is reasonable to expect that Brewer, in the exercise of his particular skill as an insurance agent, should have ascertained whether or not National could issue policies outside the State of Missouri.
Since defendants procured insurance from a company that was not authorized to issue policies outside the state of its domicile, the evidence on behalf of plaintiff was sufficient to withstand a motion for a directed verdict on the question of negligence. We do not have before us the question of whether Tri-State or National could have raised the defense that the contract was ultra vires because they are not parties to the lawsuit.
Plaintiff also contends that the defendants were liable because they unlawfully placed his business with a non-admitted company. Under the provisions of Mississippi Code Annotated section 83-17-3 (1972) insurance agents are personally liable on all contracts of insurance unlawfully made by and through them, directly or indirectly, for and in behalf of any company not authorized to do business in the state. The effect of the statute is that when an agent places insurance with a company not authorized to do business in the state he is personally liable; however, this statute must be considered along with Chapter 307, Laws of 1954, as amended by Chapter 448, Laws of 1958 which permits agents licensed thereunder to place insurance with non-admitted companies. Section 3, Chapter 307, Laws of 1954 was brought forward as Section 2, Chapter 448, Laws of 1958[1] and was in effect when both the original policy and assumption agreement were executed. The section reads as follows:
Nothing contained in this act shall authorize any person, firm, association or corporation to guarantee or otherwise *647 validate or secure the performance or legality of any agreement, instrument or policy of insurance of any insurer not licensed to do business in this state, nor to permit or authorize any nonlicensed insurer to do any insurance business by or through any person or agent acting within this state; but agents licensed hereunder acting pursuant to this act may issue and deliver to their clients, the insured, binders, policies and other confirmation of direct insurance so lawfully placed, and shall not be personally liable to the holder of any policy of insurance so issued or delivered for any loss covered thereby.
Mississippi Code Annotated section 83-17-3 (1972) imposes personal liability on an agent on all contracts of insurance placed in a company not authorized to do business in Mississippi. In order to take advantage of the exemption from personal liability under Section 2, Chapter 448, Laws of 1958, insurance placed with non-admitted companies must be lawfully placed.
We are presented with the question of whether or not the assumption agreement was lawfully placed by Brewer with Tri-State. Brewer considered the assumption agreement as a direct agreement between the insured and Tri-State. In this regard, he testified as follows:
An assumption agreement is not an endorsement to the policy. It is an agreement directly between the company and the named insured. As long as an assumption agreement is signed by the President and Secretary of the insurance company, which was done in this case, and the named insured  because the agreement has nothing to do with the agent. It is a direct agreement between the insured that he accepts the substitution of Company B for Company A. It was not an endorsement to the policy under the sense of the Mississippi insurance laws.
Since Brewer considered the assumption agreement as a direct agreement between plaintiff and Tri-State, such agreement would be violative of the first clause of Section 2 because the section does not authorize any person, firm, association or corporation to guarantee or otherwise validate or secure the performance or legality of any agreement, instrument or policy of insurance of any insurer not licensed to do business in the state. Neither National nor Tri-State were licensed to do business in the state. The assumption agreement was an effort on the part of Tri-State to validate the original policy issued by National and guarantee the performance thereof and, as such, was contra to the provisions of Section 2, supra.
Under Chapter 448, Laws of 1958 the agent and insured seeking to place insurance with non-admitted companies are required to execute an affidavit setting forth in complete detail what was done to place insurance. The only affidavit filed in an effort to comply with this requirement was an affidavit filed by Brewer dated January 11, 1965, after the loss had been sustained. In the affidavit Brewer stated that after diligent effort he was unable to procure from licensed insurance companies the insurance required to protect the property of plaintiff. The evidence does not disclose that after Brewer ascertained that National could not issue policies outside the State of Missouri he made any effort to place the risk of plaintiff with a company licensed to do business in Mississippi. Brewer should have attempted to place the business with licensed companies within the state upon learning that National could issue policies only in the State of Missouri.
We hold that the original policy issued by National and the assumption agreement, which was obtained by Brewer, was not lawfully placed within the meaning of the statute so as to entitle defendants to the exemption from personal liability under Section 2, Chapter 448, Laws of 1958.
*648 Smith asserts the defense that he relied on Brewer to secure insurance for the plaintiff, and that he had the right to do so since Brewer was duly licensed as an agent under Chapter 448, supra, with authority to place insurance with non-admitted companies. Smith and Brewer shared the commissions paid and were therefore joint adventurers and jointly and severally liable.
The evidence was sufficient to withstand the motion for a directed verdict under Count II of the declaration.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, SMITH and BROOM, JJ., concur.
NOTES
[1] Section 2, Chapter 448, Laws of 1958 appears as Section 83-21-27 Mississippi Code Annotated (1972) in a slightly different form. The only change in the section as it appears in the 1972 Code is that the words "Nothing contained in this act" have been changed to "Nothing contained in sections 83-21-17 to 83-21-31." The change was made in the 1972 Code because of the enactment of Chapter 532, Laws of 1966 which provided that insurance entities doing business in Mississippi on a non-admitted basis meet the requirements set forth in the act, for publication of lists of acceptable non-admitted insurers, and for related purposes.