**HOME HEALTH CARE AFFILIATES OF MISSISSIPPI, INC. & Gilbert's Home Health Agency, Inc. Plaintiffs**

v.

**NORTH AMERICAN INDEMNITY N.V., et al. Defendants**

**No. 1:01 CV 489–D–A.**

United States District Court, N.D. Mississippi, Eastern Division.

Jan. 12, 2004.

---

S. Craig Panter, Panter Harris & Clifford, PLLC, Jackson, MS, for Home Health Care Affiliates of Mississippi, Inc., Gilbert's Home Health Agency, Inc., plaintiffs.

Dewitt T. Hicks, Jr., Gholson, Hicks & Nichols, Columbus, MS, John A. Claro, Lawrence & Ellis, Oklahoma City, OK, for American Heartland Health Administrators, Inc.

Robert H. Faulks, Pogue & Faulks, Aberdeen, MS, Allan G. Levine, Christian & Smith, LLP, Houston, TX, for Managed Healthcare, Inc., defendants.

### OPINION GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

DAVIDSON, Chief Judge.

Presently before the Court are four motions for summary judgment and/or partial summary judgment including, Defendant W.J. "Andy" Andrews' motion for partial summary judgment, Plaintiffs' motion for partial summary judgment, third party Defendant Alan Nunnelee's motion for summary judgment, and Defendant Managed Healthcare's motion for summary judgment. Upon due consideration, the Court finds that Defendant Andrews' motion for partial summary judgment shall be denied, Plaintiffs' motion for partial summary judgment shall be granted, Defendant Nunnelee's motion for summary judgment shall be granted, and Defendant Managed Healthcare's motion for summary judgment is granted in part and denied in part.

#### A. Factual Background

The Court has previously addressed a summary judgment motion in this matter.

The factual recitation has been updated but the substance has not been altered. Plaintiff Home Health Care Affiliates of Mississippi, Inc. ("HHCA") is a Mississippi corporation that maintains its principal place of business in Mississippi. Plaintiff Gilbert's Home Health Agency, Inc. ("Gilbert's") is also a Mississippi corporation that maintains its principal place of business in Mississippi. Plaintiffs are both in the business of providing home health services. Plaintiffs are affiliated entities and share management. The essence of the Plaintiffs' complaint is that Defendants illegally sold insurance in Mississippi under the artifice of encouraging employers to set up plans to provide health care benefits for their employees, and claiming that the Employee Retirement Security Act of 1974 ("ERISA") shielded their insurance or reinsurance products from state laws.

Prior to 2000, Plaintiffs provided healthcare benefits to their employees under a group health insurance policy. Sometime around the fall of 1999, Plaintiffs began reevaluating their group healthcare policy. Curtis Bray is the Director of Operations at Gilbert's and also provides management services to HHCA. Bray was personally involved in the negotiations which led Gilbert's and HHCA to enter into business relationships with the Defendants in this lawsuit. Bray dealt with insurance agent Alan Nunnelee of Tupelo, Mississippi, who apparently told Bray he would get a quote from Defendant American Heartland Health Administrators ("AHHA") through Andy Andrews, an insurance agent in Georgia.[1] Plaintiffs assert that the "agent and other representatives of AHHA explained to Plaintiffs" that they could enter into an arrangement which would involve (1) Plaintiffs treating their benefit plan for their employees as a "self-insured plan," (2) Plaintiffs hiring AHHA to act as a third party administrator to determine whether employee claims were covered by the Plan, and (3) Plaintiffs entering into a so-called "reinsurance agreement" with a company to be recommended by AHHA.

Both of the Plaintiffs executed an "Administrative Contract" with AHHA that went into effect on April 1, 2000. Plaintiffs were to pay premiums to AHHA, which received approximately 30% for its administrative fee, and payed the remaining 70% of those premiums over to an insurance company. Also, Plaintiffs executed "Reinsurance Agreements" with United Fidelity, the insurance company or carrier, responsible for paying claims. The Plaintiffs dispute the characterization that the plan was actually "reinsurance" because AHHA agreed to find a company that would issue a policy covering 100% of the covered health claims, which they ultimately did.

Sometime in the fall of 2000, United Fidelity ceased to be the insurance carrier and Defendant North American Indemnity became the new insurance carrier.[2] Plaintiffs state that they did not discover that United Fidelity's "book of business" was acquired by North American, an undercapitalized Belgium company, until after the fact. In any event, apparently things went relatively smoothly for a while as the Defendant insurance carriers (United Fidelity, and then later, North American) were paying the claims that AHHA determined were covered and submitted to them.

1. Andrews was not named as a defendant in the original action. The Plaintiffs filed a separate case against Andrews and the two actions have since been consolidated.

2. Defendants repeatedly refer to North American as a "reinsurer" and/or "not an insurance company." Defendants repeatedly make conclusory statements about being exempt from state insurance laws.

Around July of 2001, North American began delaying paying claims submitted to them by AHHA. Thereafter, disputes began between North American and AHHA. North American alleged that AHHA failed to properly administer and adjudicate claims. North American reevaluated or re-audited several claims submitted to them. AHHA has stated that they only submitted claims that were covered, and that North American is merely stalling due to cash flow problems. In September of 2001, North American sent a letter stating that they were going to withhold all of the August claims and perform an audit. AHHA sent letters to various employers voicing concern about the reinsurer's desire to fund legitimate claims.

The consequence of this is that many claims went unpaid. Also, this led to a falling out between North American and AHHA. North American wanted a new company to work with them to administer the claims. North American selected Managed Healthcare, Inc., ("MHI") as the new administrator. Faced with a decision, Plaintiffs ultimately chose to remain with North American, and have MHI act as their new administrator. Bray instructed AHHA to forward all premiums paid by Plaintiffs and their employees to North American. Since that time, Plaintiffs have submitted premiums to MHI.

Between April 1, 2000, and November 2001, Plaintiffs assert that they sent Defendants $979,402.72. This sum represents both employee and employer contributions for the health coverage. As of April 2002, Plaintiffs claimed that according to two of the Defendants' calculations, the amount of payable claims is at least as high as $341,413.49, and by Plaintiffs' calculations, it could be as much as $600,000 or greater.

On December 26, 2001, Plaintiffs filed this suit naming as Defendants: (1) Ameri-can Heartland Health Administrators, Inc., ("AHHA") (2) North American Indemnity N.V., ("North American") (3) Managed Healthcare, Inc., ("MHI") and (4) United Fidelity Corporation. All of the Defendants are foreign corporations and none of them are certified to do business in Mississippi. Plaintiffs subsequently voluntarily dismissed United Fidelity Corp. Thereafter, Plaintiffs filed their consolidated motion for summary judgment and preliminary injunction. Plaintiffs also filed an amended complaint and then a second amended complaint. Plaintiffs' second amended complaint asserts causes of action for, *inter alia*, breach of contract; negligence; misrepresentation and/or fraud; restitution/unjust enrichment/implied contract; violation of Mississippi insurance laws; as well breach of fiduciary duties under ERISA. While the motion was pending, the Court entered a default judgment against North American. Additionally, Defendant AHHA was dismissed by order of the Court due to pending bankruptcy.

### B. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to go beyond the pleadings and "by ... affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by mere allegations or denials. Fed. R.Civ.P. 56(e).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### C. Discussion

#### 1. Defendant W.J. "Andy" Andrews' Motion for Partial Summary Judgment

The Plaintiffs' claim against Andrews is based upon his alleged involvement, as an agent, in selling insurance policies on behalf of an unauthorized carrier which has resulted in damages of an unspecified amount.[3] Andrews contends that summary judgment is appropriate for three of the Plaintiffs' claims.[4] Each argument and/or theory will be addressed in turn.

#### a. ERISA Preemption

■ In support of his motion, Andrews argues that partial summary judgment is appropriate because ERISA preempts the Plaintiffs' common law and punitive damages because these claims "relate to" a benefit plan. Conversely, Plaintiffs offer that this Court has already ruled on the issue of preemption and responded in the negative. Additionally, Plaintiffs posit that the dispute is purely contractual in nature.

Indeed, the Court has previously ruled that the Plaintiffs' claims predicated upon Mississippi Code §§ 83–17–3 and 83–17–103 regulate insurance and are, therefore, subject to ERISA's savings clause.[5] In other words, ERISA's savings clause exempts these state claims from the Act's broad preemption mandate so that the Plaintiffs' statutory claims may proceed. 29 U.S.C. § 1144(a), (b)(2)(A). However, as Andrews aptly noted the Court's ruling did not categorically rule on whether ERISA preempted all common law and punitive damages claims. The prior opinion also warned that " 'any court forced to enter the ERISA preemption thicket sets out on a treacherous path.' " *Home*

---

**3.** Plaintiffs dispute the "Itemization of Facts" filed by Andrews' in conjunction with his motion for partial summary judgment. The Court found both the itemized list of facts and the corresponding response unpersuasive. However, as commanded by historical summary judgment framework the Court viewed the facts in the light most favorable to the non-movant.

**4.** Plaintiffs' claims against Andrews include breach of contract, negligence, misrepresentation and/or fraud, restitution, breach of ERISA duties, statutory violations, civil conspiracy and joint venture.

**5.** The Court's March 21, 2003, summary judgment opinion provided, "[t]he court is of the opinion that the savings clause, which states 'nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance' applies to Miss.Code §§ 83–17–3 & 83–17–103." *Home Healthcare Affiliates of Miss., Inc. v. Am. Heartland Health Adm'rs.*, No. 1:01CV489–D–A, 2002 WL 31051009, at 10 (N.D.Miss. March 21, 2003)

*Healthcare Affiliates of Miss., Inc. v. Am. Heartland Health Adm'rs*, No. 1:01CV489–D–A, 2002 WL 31051009, at 6 (N.D.Miss. March 21, 2002) (*citing, Gonzales v. Prudential Ins. Co.*, 901 F.2d 446, 451–52 (5th Cir.1990)). Once again, the Court is forced to traverse the menacing terrain of ERISA preemption.[6]

■ The Employee Retirement Income Security Act, better known by its acronym ERISA, was enacted to protect participants in employee benefit plans and their beneficiaries, by requiring disclosure and reporting of information, establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and providing remedies, sanctions and access to federal courts. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (*quoting,* 29 U.S.C. § 1001(b)). ERISA is a comprehensive piece of legislation intended to, almost, exclusively regulate employee benefit plans which the Act has expansively defined. 29 U.S.C. § 1003(a). ERISA imposes personal liability "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties" proscribed by the regulatory scheme. *Id.* at § 1109(a). With regard to an ERISA plan, a person is a fiduciary to the extent

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* at § 1002(21)(A). For purposes of determining the existence of an ERISA fiduciary, the term should be afforded liberal construction. *Reich v. Lancaster*, 55 F.3d 1034, 1045 (5th Cir.1995). Discretion, however, is the "linchpin" of assigning fiduciary duties. *Id.* at 1048. Discretionary control or authority refers to actual decision making power and not mere influential power that one may have over the other. *Schloegel v. Boswell*, 994 F.2d 266, 271–72 (5th Cir.1993) (*citing, Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir.1991)). Nevertheless, such influential control may be exhibited once independent decision making has been relinquished. *Schloegel*, 994 F.2d at 271–72. However, a party who is simply urging the purchase of its products should not be tethered with ERISA fiduciary status. *Am. Fed'n of Unions, Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc.*, 841 F.2d 658, 664–65 (5th Cir.1988); *accord, Fink v. Union Central Life Ins. Co.*, 94 F.3d 489 (8th Cir.1996) (to become a fiduciary, an agent must be more than "merely a salesperson earning commissions").

Both parties missed the pivotal issue regarding the claims asserted against Andrews. Nevertheless, in light of the applicable standards, Andrews appears to fall outside the reach of ERISA. With regard to Andrews' activities and participation, the Plaintiffs have proffered no evidence that could be reasonably construed as discretionary control. In fact the Plaintiffs' complaint is the opposite. The complaint alleges that Andrews' activities were con-

---

**6.** There is no dispute concerning whether the Plaintiffs' plan is in fact subject to ERISA's regulation. Since the prior opinion proceeded as if a valid ERISA plan existed and the briefs provide no argument to the contrary and based on the totality of the record, the Court assumes that the plan is indeed subject to the Act.

fined to selling and marketing the insurance policy. Pl.s' 2d Am. Comp. at p. 18 ¶ 68 (Sept. 24, 2002). There are no allegations that Andrews possessed any discretion or control over the plan, its assets, administration or investment strategy that would suffice to saddle him with fiduciary duties under ERISA. The Court finds that Andrews' activities in the absence of discretionary control were not within the realm of an ERISA fiduciary. Thus, as to Andrews, the Plaintiffs' common law and statutory claims are not preempted by ERISA.

### b. Mississippi Code §§ 83–17–3 and 83–17–103

Regarding Plaintiffs' claims predicated upon §§ 83–17–3 and 83–17–103 of the Mississippi Code, Andrews contends that summary judgment is appropriate because he did not directly or indirectly participate in the negotiations or execution of the contracts, particularly the renewal contract. Section 83–17–3 of the Mississippi Code provides, "[a]n insurance agent shall be personally liable on all contracts of insurance unlawfully made by or through him, directly or indirectly, for or in behalf of any company not authorized to do business in the state." Additionally, an agent who unlawfully participates either directly or indirectly by soliciting, procuring, or receiving insurance contracts for or on behalf of a company not authorized to do business in the state shall be liable for resulting damages. Miss.Code § 83–17–103 (repealed Jan. 1, 2002).

To support his stance, Andrews cites only generally to rather lengthy deposition testimony. The Plaintiffs, on the other hand, have provided detailed evidence to the contrary. Plaintiffs produced two email communications between Andrews and others concerning the Gilberts' account indicating that Andrews was at least knowledgeable of the renewal and may have been directly involved. Additionally, Plaintiffs contend that Andrews received exorbitant commissions from his participation in selling the policy. Almost concedingly and without rebutting or explaining the evidence, Andrews devotes a substantial part of his brief arguing that he should not be liable for any damages arising from the renewal contract.[7] In an apparent attempt to cut any potential losses, Andrews beseeches the Court to bifurcate the Plaintiffs' claims into the original contract and the renewal contract. Andrews reasons that he was not in any way, shape or form involved in the negotiations to renew the policy and, therefore,

---

**7.** Even assuming Andrews has a valid argument, there is an absence of evidence in the record to reflect the intention of the parties respecting the effect of renewal; that is whether renewals are considered new contracts or a continuation of the original policy. *See, Oates v. Equitable Assur. Soc. of the U.S.,* 717 F.Supp. 449, 451–52 (S.D.Miss.1988) (where payment of monthly premiums renewed the insurance agreement it was clear that the parties contemplated one continuous contract of insurance); *Moore v. Metro. Life Ins. Co.,* 33 N.Y.2d 304, 352 N.Y.S.2d 433, 307 N.E.2d 554 (1973) (renewal by premium payment merely continued the pre-existing policy where contract could not be modified without consent of employer); *Hudson v. Reserve Life Ins. Co.,* 245 S.C. 615, 141 S.E.2d 926 (1965) (policy showed the parties contemplated continuous agreement rather than successive independent contracts); *Coliseum House, Inc. v. Brock,* 442 So.2d 778 (La.App. 1983) (where insured had no contractual right to coverage beyond one year, each subsequent renewal constituted separate contract even though no new agreement was involved). The Court declines to draw a line in the sand and finds that there is little to no distinction between the original and renewed policies. Moreover, Andrews receipt of fees was undisturbed by the renewal which, as discussed *infra,* when combined with his participation is more than sufficient to assign personal liability under State law for both the original and renewed policies.

should not be liable for any damages incurred as a result of the renewed agreement. This unsubstantiated reasoning cannot be maintained in light of the statutory language which assigns an agent liability for *"all contracts"* in which an agent is directly or indirectly involved. Miss.Code §§ 83–17–3 and 83–17–103 (emphasis added). The Plaintiffs have certainly presented enough evidence to create a genuine issue of fact as to Andrews' participation. Therefore, Andrews has failed to demonstrate that there is no genuine issue of material fact suitable for a jury. Hence, summary judgment is denied.

■■■ As a alternative position, Andrews asserts that when the Plaintiffs filed this action § 83–17–103 had been repealed rendering it inapplicable. In fact, the statute was repealed from and after January 1, 2002. Unfortunately, Andrews' reasoning is lacking. A statute, or by corollary the repeal of a statute, is generally not effective retroactively unless its express language so provides. However, a statute may be given retroactive effect when doing so does not impair vested rights. *Scarborough v. Travelers Ins. Co.*, 718 F.2d 702, 714 (5th Cir.1983). In the case at bar, the Plaintiffs entered into contractual relationship with the Defendants prior to the formal repeal of the statute. Therefore, by the time repeal was given effect the Plaintiffs' rights had vested and were memorialized in the contract terms. Filing the complaint after repeal has no bearing upon the Plaintiffs' then existing contractual rights or the Defendant's potential liability. *See, Oates v. Equitable Assur. Soc. of the U.S.*, 717 F.Supp. 449, 451–52 (S.D.Miss.1988); *Miss. Sierra Club, Inc. v. Miss. Dept. of Envtl. Quality*, 819 So.2d 515, 518 (Miss.2002).

#### c. Breach of Contract

Next, Andrews boastfully contends that because he was not a party to any of the contracts which form the basis of this action summary judgment is proper for Plaintiffs' breach of contract claim. Plaintiffs respond by citing statutes which impose liability on an agent for unlawfully procuring or participating in the procurement of insurance from a company unauthorized to do business in this state.

Clearly, the plain language of the statutes relied upon by the Plaintiffs when read together are the antithesis of Andrews' theory. Section 83–17–3 of the Mississippi Code provides, "[a]n insurance agent shall be personally liable on all contracts of insurance unlawfully made by or through him, directly or indirectly, for or in behalf of any company not authorized to do business in the state." Additionally, an agent who unlawfully participates either directly or indirectly by soliciting, procuring, or receiving insurance contracts for or on behalf of a company not authorized to do business in the state shall be liable for resulting damages. Miss.Code § 83–17–103 (repealed Jan. 1, 2002). Certainly, Andrews' line of reasoning cannot be sustained in light of the statutory language which creates contractual liability in law where none existed in fact. Therefore, the Court rejects Andrews' attempt to show that there is no genuine issue of material fact and summary judgment is denied.

#### d. Misrepresentations

■ In conjunction with the breach of contract argument, Andrews claims he has not contracted with the Plaintiffs let alone made any representations. Andrews insists that he had no involvement with the negotiation process or the corresponding contracts. For support, Andrews points to the deposition testimony of Curtis Bray, director of operations for the Plaintiffs, as requiring summary judgment. When

asked if Andrews provided the Plaintiffs with any information that was used as the basis for the decision to renew, Mr. Bray responded "not that I can recall."[8] Dep. Curtis Bray 67:23–68:3 (Feb. 13, 2003). The excerpt cited is initially troubling for the Plaintiffs. However, when read in context, the purported admission is more aptly characterized as a denial due to lack of information. As provided in the lengthy transcript, several people in different geographic locations were involved in the renewal process making it virtually impossible for one person to speak on behalf of many.

In response, the Plaintiffs allege not that Andrews made overt misrepresentations, rather that he is liable for failing to speak. The Plaintiffs claim that Andrews had knowledge of the volatility of the contract and that such knowledge imposed a duty upon Andrews, as their agent, to disclose the information. Andrews' rebuttal makes no attempt address or refute this theory of recovery. Therefore, Andrews has failed to sustain the initial burden of proof. Without question there are several issues of material fact present sufficient to preclude summary judgment for the misrepresentation claim.

### 2. Plaintiffs' Motion for Partial Summary Judgment

■ The Plaintiffs are seeking summary judgment to the effect that Defendant Andrews, as an agent, has violated § 83–17–3

of the Mississippi Code and is personally liable for the resulting damages under § 83–17–103.[9] Section 83–17–3 of the Mississippi Code provides, "[a]n insurance agent shall be personally liable on all contracts of insurance unlawfully made by or through him, directly or indirectly, for or in behalf of any company not authorized to do business in the state." Additionally, an agent who unlawfully participates either directly or indirectly by soliciting, procuring, or receiving insurance contracts for or on behalf of a company not authorized to do business in the state shall be liable for resulting damages. Miss.Code § 83–17–103 (repealed Jan. 1, 2002). Succinctly stated, the issue is whether Andrews "participated" directly or indirectly in causing the insurance contracts to be made.[10]

Predictably, each party has a different view as to what constitutes an agent's participation. As described by statute, the realm of agent participation encompasses a broad range of activities including, soliciting, procuring, receiving or forwarding applications, issuing, delivering, or *in any manner* securing, helping, or aiding in the placing of any contract of insurance. Miss. Code § 83–17–103 (repealed Jan. 1, 2002).[11] Plaintiffs have certainly provided testimony sufficient to establish some level of participation by Andrews. The record reflects that beginning in 1999, Andrews was the "middle man" between the Plaintiffs, through third party Defendant Nunnelee, and Defendant AHHA. Additionally,

---

**8.** This is Andrews' second attempt to have the Court bifurcate the Plaintiffs' claims between the original contract and the renewed contract. As discussed above, due to the absence of evidence or argument presented, Andrews' attempt is again declined. *Supra* n. 7.

**9.** It is worth noting that a prior opinion issued in this matter ordered summary judgment for the Plaintiffs against the corporate Defendants based upon the same statutory claims. *Home Healthcare Affiliates of Miss.*

*Inc. v. Am. Heartland Health Adm'rs Inc.,* No. 1:01CV489–D–A (N.D.Miss. March 21, 2003).

**10.** The parties do not dispute that the policy was issued by an "unauthorized company" as contemplated by the statute.

**11.** *See,* discussion *supra* concerning applicability of the repealed statute. Andrews' Motion for Summary Judgment subsection "b." at pp. 654–55.

the facts indicate that Andrews worked in close connection with Nunnelee to cultivate the relationship between the Plaintiffs and AHHA. The Plaintiffs have provided documented communication that reflects Andrews was involved in passing information, including an insurance proposal, between the Plaintiffs and AHHA which resulted in a policy being issued in April 2000. Other related issues exchanged in the documents include, rate information, employee claims information, as well as the payment and amount of commissions Andrews and Nunnelee were to receive. Particularly illuminating is the deposition testimony of Jack Ferguson, President and CEO of AHHA. When questioned regarding payment of service fees to Andrews, Ferguson offered that the fees were paid as consideration for, *inter alia*, "help with enrollment." Dep. Jack Ferguson 239:3–240:13 (March 27, 2003). Ferguson also stated that Andrews was "expected to perform specific duties" in exchange for receiving service fees; such duties included answering plan and claims questions and communicating with the Plaintiffs. *Id.* The Plaintiffs allege that these "service fees" are actually commissions for Andrews' help in selling the insurance policy. Indeed, an email from Andrews indicated that he should receive the "commissions" which would in turn be divided between Andrews and Nunnelee. Email from Andrews to Milt Wilkinson (Feb. 9, 2000).

In opposition, Andrews insists that it was Nunnelee who solicited, presented and sold the policy to the Plaintiffs. However, Andrews does not address the communications presented by the Plaintiffs which appear to implicate his direct involvement in securing, aiding, helping and/or placing the insurance policy. Rather than attacking or explaining this evidence, Andrews insists that he did not participate in the renewal process and therefore, he should not be liable for any damages arising from the May 2001, renewal or the subsequent change in administrators. As discussed in Andrews' Motion for Summary Judgment p. 654 n. 7 *supra,* this assertion is not well taken.

Further, while Plaintiffs claim that Andrews received generous commissions for his part in consummating the agreement, Andrews presses that receipt of service fees ceased after the administrator was changed in October of 2001.[12] The Plaintiffs urge the Court that Andrews is liable under *Ritchie v. Smith,* 311 So.2d 642 (Miss.1975), for receiving fees. According to the Plaintiffs' theory and the holding in *Ritchie,* Andrews is liable for receiving fees based on issuance of a policy through a company unauthorized to do business in this State. In *Ritchie,* the plaintiff contacted Smith, a licensed insurance agent, for the purposes of procuring fire insurance. *Id.* at 643. The agent was unable to place the policy with a company licensed to do business in Mississippi and thereafter enlisted the help of a second agent, Brewer, who was licensed to place insurance with non-admitted companies. *Id.* After being denied payment on a claim, the plaintiff sued both agents alleging that they were responsible for unlawfully placing insurance with a non-admitted company. *Id.* at 644. The court agreed. *Id.* at 647. Finding that the policy was not lawfully placed, the court stated that the

---

**12.** According to the Plaintiffs' version of events, near the first of October 2001, the Defendant reinsurer North American Indemnity "forced" the Plaintiffs to choose between keeping AHHA as their third party administrator and lose their policies with North American, or accept North American's administrator, Managed Healthcare. The Plaintiffs choose the later option, keeping their insurance policies and accepting Managed Healthcare as their new third party administrator.

agents had "shared the commissions paid and were therefore joint adventurers and jointly and severally liable." *Id.* at 648.

The Court is convinced that Andrews' "participation" in the original insurance contract is sufficient to impose personal liability under the relevant statutory scheme. Additionally, the Court finds little distinction between the original and the renewed policy sufficient to relieve Andrews of liability. The holding in *Ritchie* is further dispositive of this matter. Although Andrews' involvement in the actual renewal process may have quantitatively decreased, he continued receiving fees based upon the Plaintiffs' payment of premiums. Also unpersuasive is Andrews' contention that he should not be liable for damages after the change in administration. The statute explicitly assigns liability for helping "place *any* contract of insurance." While the third party administrator changed the insurance company and policies did not, the policies remained the same ones that Andrews "helped place." Therefore, pursuant to state statutes Andrews is personally liable for the insurance policies which he "helped place" with an unauthorized company and summary judgment shall be granted as to Plaintiffs' claims based upon §§ 83–17–3 and 83–17–103.

### 3. Third Party Defendant Alan Nunnelee's Motion for Summary Judgment

Nunnelee was initiated into this matter courtesy of Defendant Andrews. The two worked together in placing the contracts that form the basis of this entire controversy. The crux of the complaint against Nunnelee is the right of indemnification and/or contribution. Andrews' alleges that if he is liable it is only due to the actions and omissions of Nunnelee.

In their respective briefs, each party addressed the issue of ERISA preemption. Assuming the Court would determine that common law claims are preempted and that liability is assigned, Andrews suggests that ERISA allows Plaintiffs to recover at least a portion of the administrative fees paid. Without authority the premise continues, since the fees were equally divided Nunnelee should be required to indemnify Andrews for one-half the fees that Andrews may be required to pay.[13] However, as discussed *supra,* ERISA is not applicable to the claims lodged against Andrews. *See,* Andrews' Motion for Summary Judgment *supra* at pp. 652–54. In light of this finding, the Court is unpersuaded by Andrews' sharing fees rationale.

#### a. Contribution

The law of contribution in Mississippi is governed by statute. Miss.Code § 85–5–5 (1972). The statute has been interpreted as requiring that the alleged joint tortfeasors be sued jointly, a judgment rendered against them, and one of the joint tortfeasors must have paid more than his or her pro rata share of the judgment. *McClellan v. City of Durant,* 692 F.Supp. 687, 688–89 (S.D.Miss.1988). The contribution statute "is inapplicable where a defendant is sued alone as a tortfeasor." *Id.* at 689. Significantly, an alleged joint tortfeasor cannot be made a third-party defendant to assert the right of contribution where he has not been sued by the original plaintiff. *Id.* at 689 (*citing,* Wright, Miller & Kane, *Federal Practice and Procedure* § 1451 (1971)).

Based on the facts of this case and the relevant substantive law, Andrews is clearly not entitled to contribution from Nunnelee. The Plaintiffs' suit named only An-

---

**13.** It is uncontested that Andrews and Nunne-
lee shared equally the administrative fees.

drews as a Defendant, not Nunnelee. Therefore, Andrews cannot satisfy the first requirement for the right of contribution. Additionally, the law prohibits the exact tactic instituted by Andrews here; specifically, naming Nunnelee as a third party defendant in an attempt to share liability. This evidence alone entitles third party Defendant Nunnelee to summary judgment as to Andrews' contribution claim.

### b. Indemnity

■ Indemnity in Mississippi may be of three varieties, either contractual, implied or imposed by law. *Hartford Casualty Ins. Co. v. Halliburton Co.*, 826 So.2d 1206, 1216 (Miss.2001) (*quoting, Bush v. City of Laurel*, 215 So.2d 256, 259 (Miss. 1968)). In the case *sub judice*, there is no reference to a written or oral contract. Nunnelee insists that there is not an agreement in any form and this is not disputed by Andrews. Therefore, if Andrews is entitled to indemnity it would necessarily be of the implied variety.

■ Implied indemnity is warranted when the claimant can demonstrate that (1) the damages which he seeks to shift have been imposed upon him as a result of some legal obligation to the injured person; and (2) that he did not actively or affirmatively participate in the wrong. *Hartford Casualty*, 826 So.2d at 1216. "There must be a qualitative distinction between the [wrongful conduct] of two tortfeasors, *i.e.*, passive as opposed to active or negative as opposed to positive, in order to support an action for indemnity." *McClellan*, 692 F.Supp. at 690. When faced with similar procedural realities, the *McClellan* court explained that if the indemnity claimant was held liable it would be for his own negligence and not that of the third party defendant. *Id.*

Because the Court has held that Andrews is liable for violation of state statutes, presumably damages will be imposed which, thereby, satisfies the fist element necessary for indemnification. The second element will require more attention. The matter of indemnity presents the same issue repeated throughout this opinion; specifically whether Andrews' actions are sufficient to constitute "participation." As previously discussed the Court is satisfied that Andrews aided or helped consummate the issuance of the insurance policy in violation of state statutes and continued receiving fees for duties he was expected to perform in order to retain the Plaintiffs' business. *See*, Plaintiffs' Motion for Partial Summary Judgment *supra* at 656–58. Consequently, Andrews' liability stems from his own independent actions and not any vicarious liability for Nunnelee's conduct. *See, id.* Indeed, the record reflects that Nunnelee's conduct may have also violated the same state statutes. However, in accordance with *McClellan*, this does not provide a right of indemnity where both of their individual actions contributed to the Plaintiffs' alleged injuries. Moreover, Andrews' actions as a conduit for the entire transaction could hardly be described as passive. This finding is sufficient to prohibit Andrews' indemnity claim and simultaneously allow summary judgment for third party Defendant Nunnelee.

### 4. Defendant Managed Healthcare's Motion for Summary Judgment

■ Beginning October 2001, Defendant Managed Healthcare, Inc. ("MHI"), succeeded AHHA as the third party administrator for the Plaintiffs' ERISA plan. Briefly, after some controversy over payment or non-payment of claims, North American issued Plaintiffs an ultimatum, either to continue using AHHA as the third party administrator and find another reinsurer or stay with North American and find another administrator. The Plaintiffs chose to retain North American,

which then employed MHI to administer claims. In its plea for summary judgment or partial summary judgment, MHI sets forth two primary arguments; first, that it was not a party to the reinsurance contract and, therefore, should have no liability; and second, that all of the claims alleged against MHI are preempted by ERISA.[14]

■■■ A discussion related to the purpose of ERISA's regulatory scheme can be found in the Court's review of Andrews' Motion for Summary Judgment. To ensure uniform application, ERISA has broadly preempted state law that "may now or hereafter relate to any employee benefit plan" 29 U.S.C. § 1144(a). Preemption is required and state law causes of action are barred when "(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir.1995). Recognizing states' rights to regulate the business of insurance and to temper the broad preemption mandate, Congress included a "savings clause" which provides "nothing ... shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). The "savings clause" effectively saves from the broad preemption language any state law that regulates insurance. For purposes of ERISA's savings clause, a law regulates insurance when (1) it is specifically directed at the insurance industry; (2) it transfers or spreads policy holder risk; and (3) it affects an integral part of

the policy relationship between insurer and insured. *McNeil v. Time Ins. Co.*, 205 F.3d 179, 192 (5th Cir.2000). However, the "savings clause" is subject to the qualifications of the "deemer clause." The "deemer clause" provides that an employee benefit plan shall not be "deemed to be an insurance company ... or to be engaged in the business of insurance ... for the purpose of any law of any State purporting to regulate insurance, [or] insurance contracts." 29 U.S.C. § 1144(b)(2)(B).

■■■ Preemption is warranted when state law causes of action "relates to" the administration of an employee benefit plan. *See, Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138–39, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Haynes v. Prudential Health Care*, 313 F.3d 330, 333–337 (explaining the difference between complete and express preemption, and allowing preemption of state law negligence claim because the HMO's decision was primarily administrative in nature as opposed to medical.). Applying this test, a state law "relates to an employee benefit plan whenever it has a connection with or reference to such a plan." *Hubbard*, 42 F.3d at 945. "Preemption applies to bar state law claims 'even if the action arises under general state law that in and of itself has no impact on employee benefit plans.'" *Saldana v. Aetna U.S. Healthcare*, 233 F.Supp.2d 812, 816 (S.D.Miss.2002) (*quoting, Lee v. E.I. DuPont de Nemours and Co.*, 894 F.2d 755 (5th Cir.1990)).

In response to the motion for summary judgment, the Plaintiffs rely upon the Court's prior ruling, dated March 21, 2003, for the proposition that the ERISA preemption debate has been conclusively resolved. To the contrary, that opinion pro-

---

**14.** Plaintiffs' exhaustive list of claims against MHI consist of breach of contract, negligence, misrepresentation and/or fraud, restitution/unjust enrichment/implied contract, civil conspiracy, and joint ventures. *See,* Pl.s 2d Am. Comp.

ceeded upon the presumption that ERISA preemption applied to the Plaintiffs claims against the original third party administrator and MHI's predecessor, AHHA. The opinion further clarified that the state statutory claims were subject to ERISA's savings clause and, thus, saved from preemption due to the regulation of insurance contracts.

Clearly, based upon the facts currently and previously presented to the Court, the plan is indeed encompassed by the broad definition of an employee benefit plan.[15] Indeed, this cause of action arises from the Defendants' failure to pay claims associated with the benefit plan. The plan and this dispute are unavoidably subject to ERISA. Obviously, the Plaintiffs' common law claims "relate to" an employee benefit plan. The Plaintiffs are seeking to recover payment of claims and damages caused by the failure to pay (an area of exclusive federal concern) and these claims are directly associated with the relationship between the employer, the plan administrator and reinsurer (traditional ERISA entities). Thus, the Plaintiffs' claims are preempted unless the common law claims can be appropriately categorized as regulating insurance and, thereby, saved from preemption. In other words, if the common law claims do not "regulate insurance" they are preempted by ERISA.

■ In order to avoid the sword of preemption which will significantly reduce the quantity of claims against MHI, the Plaintiffs have posited several arguments. First, the Plaintiffs attempt to characterize

their claims as contractual in nature. Unfortunately, this argument is as transparent as it is incorrect. While it is true that this is a dispute involving an insurance contract, it is foremost an action to recover unpaid claims of an employee benefit plan. Further, state law claims, regardless of how artfully pled, are preempted if they 'relate to' an ERISA plan. *Haynes v. Prudential Health Care*, 313 F.3d 330, 334 (5th Cir.2002); *Hobbs v. Stroh Brewery Co.*, 129 F. Supp 2d 961, 965 (S.D.Miss. 2000).

Next, the Plaintiffs insist that common law claims can co-exist with the application of ERISA. The Plaintiffs attempt to buttress this theory by citing *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F.Supp. 429 (S.D.Miss.1995), and *Skilstaf, Inc. v. Adminitron, Inc.*, 66 F.Supp.2d 1210 (M.D.Ala.1999). Regrettable for the Plaintiffs, the Court finds no support for such a proposition and these cases are distinguishable from the case *sub judice*.

In *Union Health Care* the plaintiff employer sued the health plan administrator for breach of contract. 908 F.Supp. at 429. The employer was seeking to recover damages related to the defendant's failure to provide notice of excess claims to the reinsurance company as provided by their contract. *Id.* at 435–36. The defendant's oversight resulted in the excess claims being denied. *Id.* at 430–31. Declining to apply ERISA's preemption, the court noted that the notice required by the contract was a duty owed to the employer and not the plan beneficiaries.[16] *Id.* at 435–36. Re-

**15.** The Court relies heavily upon the factual recitation and attendant discussion contained in the prior ruling as well as the cumbersome briefs submitted by all parties to conclude that the plan is subject to ERISA's regulatory regime. *See, Home Healthcare Affiliates of Miss., Inc. v. Am. Heartland Health Adm'rs,* Inc., No. 1:01CV489–D–A (N.D.Miss. March 21, 2003).

**16.** It is also important to note that the relevant insurance policy was actual stop loss coverage as opposed to a traditional insurance for accident and sickness coverage as is this matter. As discussed in the Courts March 2003 opinion, the distinction is crucial

garding the present controversy, there is no contractual duty flowing between the Plaintiffs and MHI. Rather, the duties owed by MHI toward the Plaintiffs are required and defined by ERISA. Moreover, there was not even a scintilla of dicta that would support the Plaintiff's preemption position.

*Skilstaf* involved numerous state law claims against a third party administrator. 66 F.Supp.2d at 1210. The plaintiff employer alleged that the defendant had failed to provide appropriate excess loss insurance coverage as previously agreed. *Id.* at 1212. The plaintiff's claims did not place plan benefits or coverage in issue. *Id.* at 1216. The dispute involved a contractual claim wherein the defendant failed to meet its contractual obligations. *Id.* In denying preemption, the court described the administrator's actions as more akin to an insurance agent. *Id.* at 1215. The court found that the administrator's action involved no discretionary authority regarding the plan or its beneficiaries. *Id.* at 1215–16. Again, this Court finds no support for the Plaintiffs' preemption argument. Additionally, the factual difference of the case *sub judice* and *Skilstaf* are

unavoidable. The *Skilstaf* administrator clearly had assumed a duty to obtain a specific amount of excess loss insurance; conduct completely distinct from its ministerial claims processing duties. Here there is no such dividing line which would divorce MHI's behavior from ERISA preemption.[17]

With regard to regulating insurance, the Plaintiffs' common law claims fail to clear the savings clause's first hurdle (specifically directed at the insurance industry); nor do any of the claims attempt to transfer or spread policy holder risk. With the exception of the state statutory claims, Plaintiffs' causes of action are preempted by ERISA and are not saved by regulating insurance.[18] Rather the common law claims asserted by the Plaintiff are concepts of general application and are preempted by ERISA. Further, the nexus of Plaintiffs' complaint is the failure of the Defendants to pay claims related to an ERISA benefit plan. Resultantly, summary judgment for MHI as to Plaintiffs' common law claims shall be granted.

 Similarly, Plaintiffs' request for punitive damages must also be denied.[19]

---

to determining whether ERISA will apply to a given controversy.

17. Additionally, the Plaintiffs assert that they were somehow induced by MHI to maintain North American as its insurance carrier. The Plaintiffs contend that Milt Wilkinson, an employee of North American, held himself out as an agent of MHI, by occupying office space in MHI's building, using MHI support equipment and supplies, and transmitting written communication on MHI letter head. The Plaintiffs suggest that Wilkinson's activities were done with MHI's knowledge and/or active participation. MHI does not deny that Wilkinson occupied space in their office. Rather MHI admits that North American leased the space from MHI for Wilkinson in order to make the transfer of claims from AHHA to MHI as smooth as possible. Finally, MHI insists that it was not aware of Wil-

kinson's letters until after the fact. After reviewing the pertinent time line, the Court finds the Plaintiffs' position cannot be maintained in light of the evidence. The Plaintiffs admit that they were "forced" to make a decision whether or not to stay with North American. The Plaintiffs ultimately decided to stay with North American, relying on *inter alia* Nunnelee's advice, on or before October 1, 2001. The Wilkinson letters, strongly argued by Plaintiffs' as a catalyst for their decision, were not written until October 8, 2001, a week later.

18. Of the numerous claims pending against MHI, violation of the state statutes was not alleged.

19. Certainly, Plaintiffs would not attempt to argue that punitive damages regulate insurance and should be subject to the savings

Joining the Seventh and Eleventh Circuits, the Fifth Circuit has unequivocally held that punitive damages are not available under ERISA's regulatory scheme. *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 31–33 (5th Cir.1993) (affirming the district court's refusal to allow the plaintiff to amend her complaint to include a claim for punitive damages). Further, the court conclusively declined to create federal common law which would allow for such awards. *Id.* So it follows, that any claim by the Plaintiffs for punitive damages pursuant to state law will be preempted by ERISA and such relief is not, otherwise, available under the Act. Consequently, MHI is entitled to summary judgment as to Plaintiffs' claim for punitive damages. In all other respects MHI's motion for summary judgment is denied.

## D. Conclusion

In sum, Defendant Andrews' motion for summary judgment is denied; the Plaintiffs' motion for partial summary judgment is granted as to their statutory claims against Andrews; third party Defendant Nunnelee's motion for summary judgment is granted; and Defendant MHI's motion for summary judgment is granted in part and denied in part.

To clarify, the residue of this dispute includes all claims stated against Defendant Andrews, with the exception of any claim for breach of ERISA fiduciary duties. Also remaining are the ERISA claims against MHI. Summary judgment having been granted in favor of third party Defendant Nunnelee renders that matter closed. Accordingly, these remaining claims shall proceed to trial.

A separate order in accordance with this opinion shall issue this day.

*ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT*

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendant Andrews' motion for partial summary judgment (docket entry 179) is DENIED;

(2) the Plaintiffs' motion for partial summary judgment (docket entry 171) shall be GRANTED, as to liability against the Defendant Andrews, the amount of any judgment to be determined at trial;

(3) the Defendant Nunnelee's motion for summary judgment (docket entry 170) shall be GRANTED;

(4) as to Defendant Nunnelee the matter is CLOSED;

(5) the Defendant Managed Healthcare's motion for summary judgment (docket entry 169) shall be GRANTED IN PART and DENIED IN PART; and

(6) the remaining claims shall proceed to trial.

All memoranda, depositions, declarations, and other materials considered by the court in ruling on this motion are hereby incorporated into and made a part of the record in this action.

clause. Therefore, the Court will not waste time addressing such a far fetched theory.